# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SALVATORE P. BOMMARITO ) <br> ) <br>     Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CITY OF DELLWOOD ) <br> ) <br>     Defendant. ) | Case No.: 19-cv-2731 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Comes now Plaintiff, Salvatore P. ("Sam") Bommarito, by and through undersigned counsel, and for his Complaint hereby states as follows:

### Parties, Jurisdiction, and Venue

1. At all times relevant hereto, Plaintiff, Salvatore P. ("Sam") Bommarito is an individual who resided in St. Louis County, Missouri.

2. At all times relevant hereto, Defendant, the City of Dellwood (hereinafter "Defendant") is and was a political subdivision of the State of Missouri located within St. Louis County, Missouri and also located within this judicial district.

3. Both venue and jurisdiction are proper in this Court because federal questions are involved, and because various unlawful employment practices and other acts alleged herein were committed within the Eastern District of Missouri. Venue is therefore proper in this Court, pursuant to the provisions of 42 U.S.C. §1981, 42 U.S.C. §2000(e) *et seq.*, 28 U.S.C. §1331 (federal question) and §1391(b)(c) venue.

4. This Court has jurisdiction of this cause of action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, 42 U.S.C. §1981, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*;  28 U.S.C. §1331 and 1343(3).

## General Allegations Common to All Counts

5. Plaintiff hereby repeats, re-alleges and incorporates paragraphs 1-4 by reference, as if fully set forth herein.

6. Plaintiff Salvatore Bommarito, a fifty-nine (59) year old Caucasian male, began working for the City of Dellwood in April 1996.

7. During the majority of his tenure with Defendant, Plaintiff worked as a Supervisor in the Public Works/Streets Department. He was also employed as a Public Works Laborer I.

8. Throughout Plaintiff's twenty (20) years of employment with Defendant, Plaintiff performed his job satisfactorily, received raises, commendations, and an award for his work.

9. At all times relevant hereto, Defendant employed more than 15 persons and was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*, 42 U.S.C. 1981, and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117.

10. Plaintiff sustained a work-related injury to his right knee on January 25, 2016 for which Plaintiff began medical treatment.

11. Defendant had knowledge of Plaintiff's work-related injury of January 25, 2016 shortly after it occurred.

12. Plaintiff filed a Missouri Workers' Compensation Claim for Compensation on March 16, 2016 due to his knee injury and received workers' compensation benefits pursuant thereto.

13. Plaintiff underwent surgery on his right knee on May 24, 2016.

14. Prior to this May 2016 surgery, Plaintiff received approved leave from the City of Dellwood's Mayor Reggie Jones. Per Defendant's Employee Handbook, the Mayor may grant personal leave to employees at the Mayor's discretion upon recommendation by the employee's department head.

15. Plaintiff continuously advised Defendant of his treatment status and ongoing knee pain from the onset of his injury through his May surgery and thereafter.

16. At some point following Plaintiff's May 2016 surgery, an undated letter signed by Daffney Moore, Defendant's City Administrator, was sent to Plaintiff. This letter stated that Plaintiff's FMLA leave was exhausted on June 30, 2016 and that the City anticipated Plaintiff's return to work date to be August 25, 2016. The letter further stated that Plaintiff must obtain a fitness for duty certification prior to reporting for duty.

17. Via another undated letter from Defendant, also signed by Ms. Moore, Defendant again stated that Plaintiff's anticipated return to work date was August 25, 2016. This letter further stated that Plaintiff was scheduled for a fitness for duty examination with SSM Physical Therapy on August 24, 2016, the day before Plaintiff was anticipated to return to work.

18. An additional undated letter signed by Ms. Moore was sent to Plaintiff. This letter stated that per Plaintiff's August 12 and August 15 conversations with Defendant's City Clerk, Brooke Smith, that Plaintiff was scheduled to see his treating physician on August 22, 2016. This letter advised that the previous appointment with SSM Physical Therapy was cancelled. The letter further stated that Plaintiff's physician must provide certification that Plaintiff was "fit to return to duty without any restrictions" on August 25, 2016.

19. Plaintiff's fitness for duty examination did not occur.

20. In August 2016, Plaintiff was required to attend a meeting with Defendant's City Attorney, Donnell Smith and Defendant's City Clerk, Brooke Smith. The Mayor was not present at this meeting. Plaintiff was told that if he refused the meeting he would be fired. Plaintiff was not allowed to have an attorney present on his behalf at this meeting and was forced to sign documents at this meeting regarding his attendance.

21. On August 29, 2016, Defendant issued Plaintiff a written warning signed by Public Services Director Marvin Crumer. This warning stated that Plaintiff's request for a leave of absence or a grace period on that day due to Plaintiff's knee pain was denied. This letter further stated that Plaintiff was not allowed to return to work until his treating physician verified, by August 31, 2016, that Plaintiff was able to perform the essential functions of his job.

22. In October 2016, Plaintiff learned he would require a second surgery for his right knee. Plaintiff requested additional leave from Defendant, which was denied.

23. Plaintiff underwent a second surgery on his right knee on November 21, 2016.

24. Defendant terminated Plaintiff on December 2, 2016.

25. Throughout the course of his medical treatment for his knee injury, Plaintiff was required to use his earned vacation time, sick time, and obtain FMLA leave.

26. Defendant improperly calculated Plaintiff's vacation time, sick time, workers' compensation absences and FMLA leave in determining Plaintiff's attendance and evaluating Plaintiff's leave requests.

27. Defendant did not properly notify Plaintiff of its calculations as to Plaintiff's absences and use of leave.

28. Throughout the course of his medical care for his knee injury, Plaintiff requested and sought reasonable accommodations from Defendant, including, but not limited to, light duty, leave requests, and modification/adjustment of tasks, but Defendant denied same.

29. Plaintiff attempted to contact Mayor Reggie Jones on numerous occasions regarding his requests for accommodation without success.

30. Throughout the course of Plaintiff's medical care for his knee injury, Defendant purposefully scheduled assigned projects to Plaintiff that increased his job burdens, including projects that required more standing and walking longer distances, at times where other employees in Plaintiff's department were driving or riding upon City equipment. These projects increased Plaintiff's knee pain and caused Plaintiff to need more medical treatment.

31. All prerequisites to suit have been met in that Plaintiff timely filed his charges with the Equal Employment Opportunity Commission ("EEOC") naming the City of Dellwood as respondent. Plaintiff has timely filed this action within ninety (90) days from his receipt of the Notice of Right to Sue.

## COUNT I
## Discrimination in Violation of the Americans With Disabilities Act (ADA)

32. Plaintiff hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

33. At all relevant times, Plaintiff was a qualified individual with a disability as defined by the ADA and/or Defendant perceived or regarded Plaintiff to have a disability.

34. At all relevant times, Plaintiff suffered from physical impairment(s), including a meniscus tear and osteoarthritis of the knee, which substantially limited his major life activities including but not limited to, standing and walking.

35. Plaintiff was capable to perform the essential functions of his position with or without reasonable accommodation.

36. Plaintiff requested reasonable accommodation(s) from Defendant including light duty, adjustment of tasks, and leave when his disability necessitated him to miss time from work.

37. Defendant intentionally discriminated against Plaintiff in connection with the terms, conditions, and privileges of Plaintiff's employment by subjecting Plaintiff to differing terms and conditions of his employment based upon his disability and by terminating Plaintiff on December 2, 2016 based upon his disability.

38. Such discriminatory actions and practices by Defendant were in violation of the ADA.

39. Following Plaintiff's termination, Plaintiff's duties were assigned to a non-disabled individual.

40. Defendant's conduct was willful, malicious, intentional, and/or done with reckless disregard of Plaintiff's federally protected rights and Plaintiff is entitled to punitive damages.

41. As a direct result of Defendant's discriminatory actions against Plaintiff, Plaintiff has been damaged in that he has suffered and will continue to suffer emotional distress, pain, mental anguish, humiliation, loss of income and loss of employment benefits.

WHEREFORE, Plaintiff Salvatore P. Bommarito prays that this Court enter Judgment in his favor and against Defendant on Count I of his Complaint, for lost wages and other benefits of employment, compensatory damages, punitive damages, prejudgment interest, back pay, front pay, attorneys' fees and costs, expert fees, and for such other and further relief as this Court deems proper and just under the circumstances.

## COUNT II
## Failure to Accommodate Under the Americans with Disabilities Act (ADA)

42. Plaintiff hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 41 as if fully set forth herein.

43. At all times relevant herein, Defendant maintained a leave of absence policy for "physical disability and personal leave" where an employee can request a leave of absence for only up to three (3) months when unable to work because of an injury on or off the job.

44. At all times relevant herein, Defendant also maintained an automatic termination of employment policy that did not provide for reasonable accommodation of employees with disabilities but instead provided for termination of their employment if said employee did not return to full active employment status at the conclusion of a leave of absence.

45. Defendant's requirement that Plaintiff return to work "without any restrictions" was to force Plaintiff to initiate authorized leave and/or seek additional leave, which placed him at risk of discipline including termination.

46. The effect of Defendant's requirement that Plaintiff return to work "without any restrictions" was discriminatory and was contrived to discipline Plaintiff based upon his disability and need for a reasonable accommodation.

47. Defendant engaged in unlawful employment practices under the ADA by failing to provide reasonable accommodation to Plaintiff such as granting and/or extending his leave, by failing to offer light duty and/or modified tasks, by failing to engage in any interactive process with Plaintiff, and by terminating his employment on December 2, 2016.

48. Defendant's conduct was willful, malicious, intentional, and/or done with reckless disregard of Plaintiff's federally protected rights and Plaintiff is entitled to punitive damages.

49. As a direct result of Defendant's discriminatory actions against Plaintiff, Plaintiff has been damaged in that he has suffered and will continue to suffer emotional distress, pain, mental anguish, humiliation, loss of income and loss of employment benefits.

WHEREFORE, Plaintiff Salvatore P. Bommarito prays that this Court enter Judgment in his favor and against Defendant on Count II of his Complaint, for lost wages and other benefits of employment, compensatory damages, punitive damages, prejudgment interest, back pay, front pay, attorneys' fees and costs, expert fees, and for such other and further relief as this Court deems proper and just under the circumstances.

## COUNT III
### Unlawful Discrimination (Race) Under Title VII

50. Plaintiff hereby repeats, re-alleges, and incorporates by reference paragraphs 1 through 49 as if fully set forth herein.

51. An African-American male employee, D.K., also employed in Defendant's Streets/Public Works Department, suffered a work related injury shortly before that sustained by Plaintiff. D.K. was not required to exhaust his leave, take vacation time, or FMLA leave while treating for his injuries as was Plaintiff.

52. D.K. was permitted to take leave and/or leave a work shift early due to pain without obtaining attendance points for his absences as did Plaintiff.

53. D.K. was not required to attend meetings with Defendant's City Attorney or sign documents presented by Defendant's City Attorney regarding attendance following his injury.

54. The City of Dellwood is approximately 80% African American.

55. Plaintiff was on a list of Caucasian employees targeted for termination due to his race by one of Defendant's Mayors in that said Mayor instructed a City Administrator on multiple occasions to fire all of the "white" employees and specifically named Plaintiff therein. Another Mayor also expressed his wish to terminate two white employees of Defendant.

56. Plaintiff was terminated on December 2, 2016.

57. Defendant unlawfully terminated Plaintiff because of his race, Caucasian.

58. Following Plaintiff's termination, D.K. was promoted within Defendant's Streets/Public Works Department.

59. Defendant's conduct was continuously harassing, retaliatory, arbitrary, and capricious, and constituted unlawful employment actions and disparate treatment toward Plaintiff in violation of Title VII of the Civil Rights Act of 1964 as amended and 42 U.S.C. 1981.

60. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's federally protected rights and Plaintiff is entitled to punitive damages.

61. As a direct result of Defendant's discriminatory actions against Plaintiff, Plaintiff has been damaged in that he has suffered and will continue to suffer emotional distress, pain, mental anguish, humiliation, loss of income and loss of employment benefits.

WHEREFORE, Plaintiff Salvatore P. Bommarito prays that this Court enter Judgment in his favor and against Defendant on Count III of his Complaint, for lost wages and other benefits of employment, compensatory damages, punitive damages, prejudgment interest, back pay, front pay, attorneys' fees and costs, expert fees, and for such other and further relief as this Court deems proper and just under the circumstances.

**EVANS & DIXON, L.L.C.**

_____
James E. Godfrey, Jr., #34388MO
Susan Brown Miles, #49954MO
211 N. Broadway, Suite 2500
St. Louis, Missouri 63102
Telephone: (314) 621-7755
Facsimile: (314) 621-3136
jgodfrey@evans-dixon.com
sbrown@evans-dixon.com
*Attorneys for Plaintiff*

4187998