UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SALVATORE P. BOMMARITO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-02731-SEP |
| | ) | |
| CITY OF DELLWOOD, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant City of Dellwood's Motion to Dismiss (Doc. [8]). The motion is fully briefed. For the reasons set forth below, the motion is denied.

### **Motion to Dismiss Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in the non-movant's favor. *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly,* the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Specifically, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). The issue in considering such a motion is not

whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim.  *See Neitzke,* 490 U.S. at 327.

## Relevant Facts and Background[1]

Plaintiff Salvatore Bommarito, a 59-year-old Caucasian male, began working for the City of Dellwood ("City") in April 1996.  For the majority of his time working for the City, Bommarito's position was "Supervisor" in the Public Works/Streets Department.  He also worked as a "Public Works Laborer I."  Throughout the course of his employment, Bommarito performed his job satisfactorily and received raises, commendations, and an award for his work.

On January 25, 2016, Bommarito sustained a work-related injury to his right knee.  The City learned of the injury soon after it happened.  On March 16, 2016, Bommarito filed a workers' compensation claim and thereafter began receiving benefits.  He underwent surgery on his right knee on May 24, 2016.  Prior to his surgery, Bommarito received approved leave from the City's Mayor, Reggie Jones.  Bommarito regularly advised the City of his treatment status and ongoing knee pain from the onset of his injury.

At some point following Bommarito's surgery, Bommarito received an undated letter from the City Administrator stating that Bommarito's FMLA leave was exhausted on June 30, 2016, and that the City anticipated he would return to work on August 25, 2016.  The letter stated that Bommarito would be required to obtain a fitness-for-duty certification prior to returning to work.  Another undated letter from the City Administrator indicated that Bommarito was scheduled for a fitness-for-duty examination on August 24, 2016.  A third undated letter from the City Administrator stated that Bommarito was scheduled to see his treating physician

---

[1] The facts contained herein are taken from the allegations set out in Plaintiffs' complaint. They are assumed to be true for the purpose of this Memorandum and Order. *See Iqbal,* 556 U.S. at 678-79; *Neitzke,* 490 U.S. at 326–27.

2

on August 22, 2016, and the August 24, 2016, appointment was cancelled.  That letter further stated that Bommarito's physician would be required to provide certification that he was "fit to return to duty without any restrictions" on August 25, 2016.  Bommarito's fitness-for-duty examination never took place.

On August 29, 2016, the City issued Bommarito a written warning denying Bommarito's request for a leave of absence due to his knee pain and advising Bommarito that he was not allowed to return to work unless his treating physician verified that he was able to perform his job's essential functions by August 31, 2016.

In October 2016, Bommarito learned that he would need a second surgery on his right knee.  Bommarito requested additional leave, which the City denied.  Bommarito underwent surgery on November 21, 2016, and the City terminated his employment on December 2, 2016.  During the course of his treatment, Bommarito was required to request FMLA leave and use his earned vacation time and sick time, all of which the City improperly calculated.  Bommarito requested reasonable accommodations during the course of his treatment, but the City denied his requests.  Instead, the City purposefully assigned Bommarito projects that increased his job burdens, including projects requiring extra standing and walking, causing Bommarito to experience further knee pain and require further treatment.

Bommarito alleges violations of the Americans with Disabilities Act (the "ADA").  He alleges that the City intentionally discriminated against him by subjecting him to different terms and conditions of employment, and ultimately terminating him, based upon his disability.  He also alleges that the City's policies of allowing a maximum of three months of leave, not providing reasonable accommodations for disabled employees, and mandating automatic termination for employees who cannot return to work without restrictions all violate the ADA.

3

Bommarito also alleges violation of Title VII on the basis of race.  He alleges that a similarly situated Black employee received more favorable treatment and was in fact promoted following Bommarito's December 2016 termination.  Bommarito alleges that he was on a list of White employees targeted for termination because of his race; he further alleges that a previous mayor had instructed a city administrator on multiple occasions to fire all White employees, specifically mentioning Bommarito.

Bommarito's complaint has three counts:

**Count I**: Discrimination in Violation of the Americans with Disabilities Act (ADA);

**Count II**: Failure to Accommodate Under the Americans with Disabilities Act (ADA);

**Count III**: Unlawful Discrimination (Race) Under Title VII.

## Discussion

The City moves to dismiss Bommarito's complaint in its entirety, arguing that he failed to timely file his Charge of Discrimination pursuant to 42 U.S.C. § 2000e-5(e)(1), thereby failing to exhaust his administrative remedies.[2]  Doc. [9] at 4.  The ADA and Title VII require an employee to file a charge of discrimination within 300 days of the alleged discriminatory act as a condition precedent to maintaining an action under either statute.  *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005).  If the charge is not filed within the allotted time, subsequent claims are time-barred and must be dismissed for failure to exhaust administrative remedies.  *See, e.g.*, *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 989 (8th Cir. 2011); *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 638 (8th Cir. 2003).

The City attaches to its Memorandum in Support of its Motion to Dismiss (Doc. [9]) a Charge of Discrimination form date-stamped December 18, 2017 (Doc. [9-1]) and a Dismissal

---

[2] ADA claims are subject to the same timeliness requirements as Title VII claims.  *See* 42 U.S.C. § 12117(a).

4

and Right to Sue Letter from the EEOC dated July 11, 2019 (Doc. [9-2]).[3] The City contends that Bommarito should have filed his charge by no later than September 28, 2017—300 days after the last alleged instance of discrimination on December 2, 2016. Doc. [9] at 4. Because Bommarito's Charge of Discrimination form was filed out of time, the City argues, his complaint should be dismissed for failure to exhaust his administrative remedies. *Id.* at 5.

Bommarito responds with evidence that he did file the charge prior to September 28, 2017. Bommarito's EEOC charge transmittal shows that the EEOC received his charge on May 31, 2017. Doc. [14-1]. The next day, on June 1, 2017, the EEOC prepared its notice to the City, advising the City that "a charge of employment discrimination has been filed against your organization," citing Title VII, the ADA, and the Age Discrimination in Employment Act ("ADEA"). Doc. [14-2] at 1. "A charge of discrimination is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Here, the EEOC received, reviewed, and processed Bommarito's charge on May 31, 2017. Therefore, Bommarito's charge was timely filed on that date. *See* Doc. [14-1] (listing May 31, 2017, as "Date of Receipt").

It appears that the City bases its motion to dismiss not on the date Bommarito's charge was originally filed, but on a later date, December 18, 2017, when the charge was perfected. The

---

[3] Consideration of these documents and the documents attached to Bommarito's opposition brief does not convert the City's motion to dismiss into a motion for summary judgment. In ruling on a motion to dismiss, a court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir. 2012). The Charge of Discrimination and Right-to-Sue Letter satisfy that standard in that they are integral to Plaintiff's claim and matters of public record. *See, e.g.*, *Smith v. UPS Freight*, No. 4:15-CV-382 JAR, 2015 WL 4274594, at *1 (E.D. Mo. July 14, 2015) (citing *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002)) (taking judicial notice of Right-to-Sue Letter and Charge of Discrimination without converting motion to dismiss into a motion for summary judgment).

5

Supreme Court has upheld 29 C.F.R. § 1601.12(b), which allows a technically flawed charge of discrimination to be perfected by later amendment:

> A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

29 C.F.R. § 1601.12; *see Edelman v. Lynchburg College*, 535 U.S. 106, 112-13 (2002); *Sifferman v. Bd. of Regents, Se. Missouri State Univ.*, 250 F. Supp. 2d 1139, 1143 (E.D. Mo. 2003). Because the City's exhaustion argument is based on a misunderstanding of when Bommarito's charge was filed, it fails.

In addition to complying with the 300-day filing requirement for his charge of discrimination, Bommarito also timely filed his complaint in this lawsuit relative to his Right to Sue Letter. The EEOC issued Bommarito a Right to Sue Letter on July 11, 2019. Doc. [14-3] at 1. It advised him that he had 90 days from his date of receipt of the letter to file suit. *Id.* Bommarito filed his complaint on October 8, 2019, Doc. [1], thereby complying with the 90-day requirement.

## Conclusion

**IT IS HEREBY ORDERED** that Defendant City of Dellwood's Motion to Dismiss is **DENIED.**

Dated this 2nd day of September, 2020.

*Sarah E. Pitlyk*

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE